CHAS. BRUNING CO. INC. *v.* UNITED STATES (No. 3844)[1]

[1] T. D. 47603.

United States Court of Customs and Patent Appeals, March 4, 1935

*Curtis E. Loehle* for appellant.

*Joseph R. Jackson*, Assistant Attorney General (*Ralph Folks* and *Marcus Higginbotham, Jr.*, special attorneys, of counsel), for the United States.

[Oral argument February 7, 1935, by Mr. Folks; submitted on brief by appellant]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the Second Division of the United States Customs Court overruling the protest of the importer against the classification and duty assessment by the Collector of Customs at the port of Chicago, Ill., of certain paper.

The collector classified it under the language of paragraph 1405 of the Tariff Act of 1930, which reads:

\* \* \* plain basic paper ordinarily used in the manufacture of paper commonly or commercially known either as blue print or brown print, and plain basic paper ordinarily used for similar purposes, 20 per centum ad valorem; \* \*· \*.

The importer's claim is under that language of the same paragraph which reads:

\* \* \* unsensitized basic paper and baryta coated paper, to be sensitized for use in photography, 5 per centum ad valorem; \* \* \*.

The unanimous opinion of the trial court, T. D. 47199, written by Dallinger, J., is particularly comprehensive in its review of the testimony in the case and of the judicial decisions thought to have a bearing upon the controversy.

It is to be noted that the matter of use enters into both paragraphs quoted, *supra*, and the brief for appellant alleges that the Tariff Act of 1930 appears to be the first in which Congress made a distinction, based upon use, between whatever kinds of basic paper there may be which are used in the various methods of photography or reproduction.

As we understand appellant's contention, there is no claim that the paper at issue is not literally "basic paper," but there is a challenge of the collector's finding to the effect that it is to be used for purposes similar to blue print.

It is said that the particular paper here at issue is used for making "B. & W. prints," but there is no claim that it is wholly or chiefly used in connection with photographs made with a camera or lens. Upon the contrary, it seems to be conceded that B. & W. prints are

made by what is referred to by appellant's counsel as "contact photography," the same as are blue prints and brown prints, but it is insisted that the B. & W. prints are made on paper "which has been properly sensitized for the purpose" and that they are "finished photographs-positives" while blue and brown prints "are at best unfinished photographs-negatives."

It would seem, since appellant's claim is that the merchandise as imported was unsensitized, just as are the blue print and brown print papers included within the particular language quoted, *supra*, from paragraph 1405, that the elements of "photographs-negatives" and "photographs-positives" so alluded to (even were it conceded that the "photographic" art is involved in the uses of the papers) have no particular relevancy here.

As has been indicated, the trial court made a comprehensive review of all the material testimony in the case and, following this, observed:

\* \* \* if the imported paper is a photographic paper, the record utterly fails to establish that fact. On the contrary, we consider the evidence adduced as fairly supporting the collector's classification that it is precisely the kind of paper which is ordinarily used in making blueprints, or brownprints, or similar prints. \* \* \*.

The witness for plaintiff herein admits that "the back side of the imported paper must be coated with a thin film of gelatine to eliminate excessive curling such as is experienced in photographic paper." That concession coupled with his further admission that blueprint and brownprint papers are not photographic papers, and our finding that B. & W. prints are used "for similar purposes" to blueprint and brown within the meaning of said paragraph 1405, render untenable the claim alleged by plaintiff that the imported paper is in fact or law a "photographic" paper. \* \* \*.

From our examination of the testimony, we conclude that there is no reason to question the correctness of the trial court's findings of fact. We think appellant failed to sustain by evidence the burden resting upon it of overcoming the presumption of correctness of the collector's classification.

We are wholly unable to discern from the record wherein it has been shown that the paper is any more closely related to photographic paper than are the papers ordinarily used for the manufacture of blue prints or brown prints.

It is argued in the brief for appellant that the imported paper is not suitable and, in fact, cannot practically be used in the manufacture of blue print or brown print papers. An answer to this contention is that the portion of the paragraph under which it was classified is not limited to blue print or brown print papers. It provides for any basic paper ordinarily used similarly, or for similar purposes, and, in our opinion, the record fails to establish that the involved paper is not ordinarily used for similar purposes.

Nothing is found in the change of language from prior tariff acts which, in our opinion, evidences any intent on the part of Congress that there be such a change in the classification of the "basic paper" at issue as is here contended for by appellant.

The judgment of the United States Customs Court is *affirmed*.